**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

| | |
|---|---|
| **SONIA YETSABETH PACHECO SUAREZ** | **CIVIL ACTION NO. 26-2755** |
| | **SECTION P** |
| **VS.** | |
| | **JUDGE TERRY A. DOUGHTY** |
| **WARDEN SOUTH LOUISIANA ICE PROCESSING CENTER, ET AL.** | **MAG. JUDGE CAROL B. WHITEHURST** |

## REPORT AND RECOMMENDATION

Petitioner Sonia Yetsabeth Pacheco Suarez,[1] a detainee in the custody of the Department of Homeland Security ("DHS") and the Bureau of Immigration and Customs Enforcement ("ICE"), petitions the Court for a writ of habeas corpus under 28 U.S.C. § 2241.[2] Respondents oppose the petition. [doc. # 7]. For reasons that follow, the Court should deny this petition.

## Background

Petitioner is a citizen of Venezuela. "On or about August 9, 2023, Petitioner entered the United States without inspection near Brownsville, Texas, and was placed in removal proceedings. She has resided continuously in the United States

---

[1] Petitioner's "A Number" is 241-388-358.

[2] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636, and the standing orders of the Court.

since that date." [doc. # 1, p. 5]. She has no criminal convictions. *Id.* "Petitioner's immediate family is in the United States. She lived in North Miami Beach with her partner, Yhoiver Lucena Perez, and her ten-year-old son, Lionel Alessandro Pacheco — both Venezuelan nationals — and she is her family's primary financial support." *Id.*

"On August 12, 2023, ICE released Petitioner on an Order of Release on Recognizance . . . ." [doc. #s 1, p. 5; 1-3, p. 2]. "From her release on August 12, 2023, until her detention on April 28, 2026, -- more than two and a half years -- Petitioner complied with every condition of her release. Petitioner reported to ICE every four weeks and never missed a single appointment, and she appeared for all scheduled immigration-court hearings. While living in the community, Petitioner worked as a delivery driver for Walmart for over a year, paid taxes, and served as the primary financial support for her family." [doc. # 1, p. 5].

ICE re-detained Petitioner on April 28, 2026, at her home. [doc. # 1, pp. 1, 6]. Petitioner states: "Her detention cost her employment as a Walmart delivery driver and has caused substantial financial hardship to her partner and young son. [] Petitioner is separated from her partner and her ten-year-old son, Lionel. Since her detention, her son has become depressed and been diagnosed with a behavioral condition. [] Petitioner suffers from a kidney condition that requires ongoing treatment, including intravenous treatment, and she has not received medical care

for it during her detention. She also suffers severe pain from a prior hand fracture. [] Petitioner's detention impairs her ability to gather documents, contact witnesses, and prepare for her imminent July 22, 2026 merits hearing." *Id.* at 7.

On July 22, 2026, an immigration judge ordered Petitioner removed. Petitioner appealed the removal order to the Board of Immigration Appeals ("BIA"); her appeal is pending.

Petitioner filed this proceeding on July 28, 2026. [doc. # 1]. She claims that the Government is violating her right to procedural due process by detaining her without affording her a bond hearing or an "individualized determination by any neutral decision-maker that detention is necessary to prevent flight or protect the community." *Id.* at 8.

Respondents opposed the petition on September 1, 2026. [doc. # 7].

## <u>Law and Analysis</u>

### I. 8 U.S.C. § 1225 Vs. 8 U.S.C. § 1226

The Fifth Circuit Court of Appeals held that aliens who have not been admitted may be detained without bond hearings under 8 U.S.C. § 1225(b)(2)(A) even when they have been present in the United States for many years. *Buenrostro-Mendez*, 166 F. 4th 494, 502 (5th Cir. 2026). In reaching its conclusion, the court analyzed the meaning of "seeking admission" and "applicants for admission" in 8 U.S.C. § 1225. *Id.* The court concluded that "applicants for admission," which

includes all aliens who have not previously been admitted to the United States, are necessarily "seeking admission" and, therefore, subject to mandatory detention under § 1225(b)(2)(A). *Id.*

Here, *Buenrostro-Mendez* governs Petitioner's detention status: she is detained under Section 1225. Under 8 U.S.C. § 1225(b)(1)(B)(ii) (emphasis added), "If the officer determines at the time of the interview that an alien has a credible fear of persecution (within the meaning of clause (v)), the alien *shall be detained* for further consideration of the application for asylum." Under Section 1225(b)(1)(B)(iii)(IV) (emphasis added), "Any alien subject to the procedures under this clause *shall be detained* pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed." Under section 1225(b)(2)(A) (emphasis added), "Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien *shall be detained* for a proceeding under section 1229a of this title."

Plainly, Section 1225 does not authorize release on bond. *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018). Petitioner is, therefore, not statutorily entitled to bond or a bond hearing.

## II. Due Process

Petitioner suggestively claims that her detention without a bond hearing violates her right to substantive due process.

In *Dzheison Ford v. Timothy Ducote, et al.*, 3:20-cv-1170, Doc. 19, (W.D. La. Nov. 2, 2020), the district judge opined in pertinent part:

> In *Department of Homeland Security v. Thuraissigiam*, 140 S.Ct. 1959 (2020), a Sri Lankan national was stopped 25 yards after crossing the southern border of the United States. He was detained for expedited removal. An asylum officer rejected his credible fear claim. Thuraissigiam then filed a federal habeas corpus petition in which he, for the first time, asserted a fear of persecution and requested a new opportunity to apply for asylum. In reversing the appellate court, the Supreme Court found the detention did not violate the Due Process Clause. Although not a case of unreasonable detention, the case is important as to Due Process rights for illegal aliens. Citing *Nishimare Ekin v. United States*, 142 U.S. 651, 660 (1892), the Court held that with regard to foreigners who have never been naturalized or acquired any domicile or residence in the United States, "'the decisions of executive or administrative officers, acting within powers expressly conferred by Congress, are due process of law.'" 140 S. Ct. at 1977.
>
> In *Demore v. Kim*, 538 U.S. 510 (2003), Kim had entered the United States lawfully and had resided in this country for over 10 years before committing a crime, which made him deportable. Like Ford, Kim argued his mandatory detention violated due process when no determination had been made whether he posed a danger to society or a flight risk. Also, like Ford, Kim asked for an individualized bond hearing which was not authorized under the statute. Both the District Court and the Court of Appeals for the Ninth Circuit found the detention without a bond hearing violated Kim's due process rights. In reversing the District Court and Ninth Circuit, the Supreme Court held detention during these proceedings did not violate Kim's due process rights.

> Also, like Ford, Kim relied on the case of *Zadvydas v. Davis*, 533 U.S. 678 (2001). In *Zadvydas*, two aliens were held pending removal after final order of deportation. However, no country would take them, so their detention continued for years beyond the 90–day removal period of 8 U.S.C. §1231(a). The Supreme Court held that "once removal is no longer reasonably foreseeable, continued detention is not authorized by the statute." *Id*. at 699. The Supreme Court concluded that six months was a presumptively reasonable period of detention, beyond the removal period, to remove aliens ordered deported. *Id*. at 702.
>
> The *Kim* Court held that *Zadvydas* was materially different because the detention of the aliens in *Zadvydas* was "indefinite" and "potentially permanent." Therefore, the correct standard to apply is to determine whether Ford's detention is "indefinite" or "potentially permanent."
>
> Ford's detention is not "indefinite" or "potentially permanent." Ford's detention ends when the removal proceedings end. Ford's focus on "unreasonable detention" is incorrect. As long as Ford's detention is not "indefinite" nor "potentially permanent," Ford's due process rights are not violated. See also *Jennings v. Rodriguez*, 138 S.Ct. 830 (2018).

Here, Petitioner is not constitutionally entitled to a bond hearing. *See Demore*, 538 U.S. at 531 ("Detention during removal proceedings is a constitutionally permissible part of that process.").[3] As in *Ford*, Petitioner's detention is not indefinite or potentially permanent. On July 22, 2026, an immigration judge ordered Petitioner removed. She appealed the removal order to the BIA; her appeal is pending. Her appeal is likely extending her detention. Petitioner's detention will

[3] *See also Romero v. Tate*, 2026 WL 1067566, at *1 (S.D. Tex. Apr. 20, 2026); *Bekboev v. Vergara,* 2026 WL 1011244, at *1 (S.D. Miss. Apr. 14, 2026); *Mlaih v. Noem*, 2026 WL 787536, at *4 (N.D. Tex. Mar. 19, 2026).

likely end (i) when her order of removal becomes final (if the BIA affirms the order of removal or dismisses Petitioner's appeal) and the Government removes her or (ii) if the BIA rules in Petitioner's favor.

Accordingly, the Court should deny Petitioner's claim. Petitioner may of course re-file her claim if her detention becomes indefinite or potentially permanent.

**III. Procedural Due Process**

Citing *Mathews v Eldridge*, 424 U.S. 319, 335 (1976), Petitioner claims that the Government is violating her right to procedural due process by continuing to detain her without a bond hearing. [doc. #s 1-2; 21, pp. 2-4]. Petitioner's claim, however, does not sound in procedural due process.

"The right to prior notice and a hearing is central to the Constitution's command of due process," as it "ensure[s] abstract fair play to the individual" and "minimizes substantively unfair or mistaken deprivations." *U.S. v. James Daniel Good Real Prop.*, 510 U.S. 43, 53 (1993).

"The constitutional minimum of due process guarantees that notice and an opportunity to be heard be granted at a meaningful time and in a meaningful manner." *Gibson v. Tex. Dep't of Ins.*, 700 F.3d 227, 239 (5th Cir. 2012) (quoting *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972) (internal quotation marks omitted)). "The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement." *Cleveland Bd. of*

*Educ. v. Loudermill*, 470 U.S. 532, 546 (1985). "'[T]he root requirement' of the Due Process Clause" is "'that an individual be given an opportunity for a hearing *before* he is deprived of any significant protected interest.'" *Id.* (quoting *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971)); *see Zinermon*, 494 U.S. at 127 ("Applying [the *Mathews*] test, the Court usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty . . . . ").

Here, Petitioner does not claim that she lacked notice and an opportunity to be heard or respond *before* the Government deprived her of any liberty or property interest. Pre-deprivation notice and an opportunity to be heard are key components of due process. *Loudermill*, 470 U.S. at 546 ("The essential requirements of due process . . . are notice and an opportunity to respond."). Instead, Petitioner primarily claims that the Government has not afforded her an "adequate custody hearing before a neutral decision-maker with authority to order release on bond or conditions." [doc. # 1, p. 1].

Petitioner argues that by failing to provide her a bond hearing, the Government is risking detaining an individual who is not a flight risk or a danger to society. [doc. # 1, p. 9]. However, as explained above Respondents are statutorily required to detain her under 8 U.S.C. § 1225. Thus, even if a neutral decisionmaker

determined that she was not a flight risk or a danger, Respondents would still detain her.

In *Connecticut Dep't of Pub. Safety v. Doe*, 538 U.S. 1, 8 (2003), the statute at issue required all sex offenders to register so that their information could be published. The respondent, a convicted sex offender, argued that the law violated his procedural due process rights by requiring him to register without a hearing as to whether he was "currently dangerous." *Id.* at 6. Rejecting the argument, the Court opined, "Plaintiffs who assert a right to a hearing under the Due Process Clause must show that the facts they seek to establish in that hearing are relevant *under the statutory scheme.*" *Id.* at 8 (emphasis added). Whether the respondent was not dangerous was "of no consequence" under the statute because it required registration of *all* convicted sex offenders. *Id.* at 7.

Here, whether Petitioner is a risk of flight or danger is largely irrelevant to whether the Government must—under relevant statutory and regulatory schemes—detain her and remove her.[4] Relevant issues, for example, include her identity,

[4] To be sure, noncitizens detained under 8 U.S.C. § 1225(b) *may* be released on parole for "urgent humanitarian reasons or significant public benefit," if they "present neither a security risk nor a risk of absconding." *See* 8 U.S.C. § 1182(d)(5)(A); 8 C.F.R. § 212.5(b). Thus, a determination that Petitioner is neither a flight risk nor a danger is not completely irrelevant. Here, to the extent Petitioner contends she is entitled to release for urgent humanitarian reasons or for significant public benefit, she had and has the opportunity to present such a contention in her removal proceedings. *If* the Secretary of Homeland Security agreed, *then*

citizenship, whether circumstances have changed following any release from detention, whether she was ever admitted or paroled, when she entered this country, whether another country might accept her, and whether she is entitled to asylum or other protection from removal. The Government has provided, and is providing, process after detaining her in the form of a Notice to Appear, the ability to respond to the Government's motions, the opportunity to be heard in a hearing or via motion(s), the opportunity to present evidence, and an appeal. *See Clavijo v. Thompson, et al.*, 2026 WL 923310, at *3 (S.D. Tex. Mar. 26, 2026) ("8 USC § 1225(b)(2)(A), *mandates* detention of those falling within the definition of 'applicants for admission' without regard to any individualized custody determination concerning dangerousness or flight risk. And the Fifth Circuit in *Buenrostro-Mendez* has now determined that such detention lawfully applies to 'applicants for admission' like Petitioner. A hearing as to dangerousness or flight risk is thus irrelevant to the *lawfulness* of his detention under the statute.").

Accordingly, the Government has not violated Petitioner's right to procedural due process. The Court should dismiss this claim.

---

Petitioner could attempt to demonstrate that she is neither a security risk nor a risk of absconding.

**Recommendation**

For reasons above, **IT IS RECOMMENDED** that Petitioner Sonia Yetsabeth Pacheco Suarez's petition be **DENIED** and **DISMISSED WITHOUT PREJUDICE**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Lafayette, Louisiana, this 14th day of October, 2026.

Carol B. Whitehurst
United States Magistrate Judge